## THE STATE v. TOWER, Appellant.

Division Two, December 13, 1904.

1. **STATUTORY CONSTRUCTION: City of 100,000 Inhabitants.** A statute applicable to "cities which now have or may hereafter have one hundred thousand inhabitants" is also applicable to cities having any number of inhabitants in excess of one hundred thousand inhabitants. Those words do not mean that the act is applicable only to cities having exactly one hundred thousand inhabitants. That restriction would be a strained construction. The rule that statutes must be construed strictly against the State and liberally in favor of the citizen, and that courts must adhere to the strict letter of the law, does not require a construction that would render the law nugatory.

2. **NUISANCES: Power of Legislature.** The Legislature has the right to declare that to be a nuisance which is neither such *per se* nor was such at common law.

State v. Tower.

3. ———: ———: **Invading Power of Court.** The General Assembly does not invade the judicial province by making that unlawful which is not inherently a nuisance.

4. ———: ———: **Emitting Smoke.** It was entirely competent for the General Assembly to declare the emission of dense, opaque smoke into the open air of large and populous cities to be a nuisance *per se,* as being a constant annoyance to the general public therein, and one calculated to interfere with the health and comfort of their inhabitants.

5. ———: **Smoke: Cities of 100,000 Inhabitants: Unreasonable Classification.** A statute which makes unlawful the emission of dense, opaque smoke in cities having one hundred thousand inhabitants and saying nothing of such conduct in cities of less size, does not create an unreasonable classification.

6. ———: ———: ———: ———: **Power of Courts.** It is not for the courts to say to what cities a statute making unlawful the emission of dense volumes of smoke shall apply, so long as no classification prevented by the Constitution is made. It is not for the courts to say that there is no reasonable distinction between the emission of smoke in densely populated cities and the emission of like smoke in sparsely settled cities of small size. That is a question of relative evils which it is for the Legislature to determine.

7. ———: ———: **Application to all Citizens: No Practicable Device.** The statute of 1901 making it unlawful to emit dense, opaque smoke in the oen air in populous cities is not class legislation in that it exempts "owners of premises who may be able to show to the satisfaction of the court or jury trying the facts that there is no known practicable device, appliance or means or method by the application of which to their buildings or premises the emission or discharge of the dense smoke could have been prevented." That defense is not confined to any particular person or class, but is open to every citizen, and the exception is not unreasonable, nor oppressive.

8. ———: ———: ———: ———: **Adjustment to Conditions.** The policy of adjusting a regulation or law to meet existing conditions is a matter peculiarly within the province of the legislative department of government.

9. ———: ———: ———: **Omission of Locomotive Engines.** Nor is such statute in violation of the fourteenth amendment to the Federal Constitution as an unreasonable classification, because by the use of the words "any building, establishment or premises" locomotive engines or steamboats are not included. There is a reasonable basis for the classification of stationary engines and buildings in one class, and portable engines in another.

State v. Tower.   .

10. ———: ———: **Brick-Kilns.** Said statute does not omit brick-
kilns from its application.

11. ———: ———: **Qualified by Actual Injury: Power of Legisla-
ture.** The Legislature, in the exercise of its police powers, can
declare the emission of dense smoke into the open air of popu-
lous cities to be a nuisance without qualifying it by adding to
it that such smoke must injure the property in the neighbor-
hood or interfere with the comfort or injure the health of the
citizens. In the exercise of that power the Legislature is
vested with a wide discretion and liberty of choice, and the ex-
tent to which it is to be exercised in the protection of the
health and safety of citizens, is within the legislative discretion.

12. **CONSTITUTIONAL LAW: Rule for Courts.** The courts will
not declare a statute to be unconstitutional unless the violation
of the Constitution is so manifest as to leave no room for rea-
sonable doubt.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*Jones, Jones & Hocker* and *Crigler & Kelley* for
appellant.

(1) The statute upon which this prosecution is
based is a criminal or penal statute and as such, under
all the authorities, should be strictly construed. Black
on Interpretation of Laws (1896 Ed.), pp. 286, 287,
292, 293; State v. Bryant, 90 Mo. 538; State v. Schuch-
mann, 133 Mo. 123; State v. Howard, 137 Mo. 296;
State v. Butler, 178 Mo. 319; State v. Gritzner, 134
Mo. 527. (2) This statute, being a criminal or penal
one, should not be extended by implication to include
anything not strictly within its terms. The city of St.
Louis is not a city having a population of 100,000;
hence this statute is not applicable to said city. Black
on Interpretation of Laws (1896 Ed.), pp. 286-287;
State v. Schuchmann, 133 Mo. 124; Bishop, Statutory
Crimes (2 Ed.), secs. 119, 193, 194, 218, 220, 227; State

v. Reid, 125 Mo. 48; State v. Gritzner, 134 Mo. 527; State v. Butler, 178 Mo. 320. (a) Where a statute defining an offense designates one or more classes of persons as subject to its pains and penalties, all others not thus mentioned are to be deemed excluded from the prescribed punishment. Howell v. Stewart, 54 Mo. 400; State v. Gritzner, 134 Mo. 527. (b) The maxim, "The expression of one thing is the exclusion of another" is applicable in the construction and interpretation of criminal and penal stautes. Howell v. Stewart, 54 Mo. 400; State v. Jaeger, 63 Mo. 410; 26 Am. and Eng. Ency. Law (2 Ed.), 604; Jenkinson v. Thomas, 4 Term Rep. 666; State v. Reid, 125 Mo. 48. (3) This statute, being a criminal or penal one, and the terms of it being clear and unambiguous, the literal interpretation must control and must be strictly followed in the enforcement of said statute and in its application. Black on Interpretation of Laws (1896 Ed.), pp. 35, 36, 37, 38, 39, 40; 26 Am. and Eng. Ency. Law (2 Ed.), 598; Hicks v. Jamison, 10 Mo. App. 35; City of Westport ex rel. v. Jackson, 69 Mo. App. 154. (a) If the language is clear and admits of but one meaning, the Legislature should be intended to mean what it has plainly expressed, and there is no room for construction. 26 Am. and Eng. Ency. Law (2 Ed.), 598-599. (b) "Although a literal construction may defeat the object of an act, it is better to abide by this consequence than to put upon it a construction not warranted by the words of the act in order to give effect to what we may suppose to have been the intention of the Legislature." Rex v. Barham, 8 B. & C. 99, 15 E. C. L. 157; Black on Interp. of Laws (1896 Ed.), p. 287. (4) This statute is unconstitutional for the reason that it amounts to a legislative judgment and because it declares that to be a nuisance which is not inherently one, a nuisance being something which worketh hurt, inconvenience or damage. State v. Julow, 129 Mo. 163. (5) Because it is a special law applicable to

only certain communities and to certain individuals within those communities, and is in violation of article 4, section 53, Constitution of Missouri. State ex rel. v. Tolle, 71 Mo. 650; State ex rel. v. Hermann, 75 Mo. 340; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95; State ex inf. v. Washburn, 167 Mo. 689; Henderson v. Koenig, 168 Mo. 376. (6) Because said statute assumes guilt upon certain facts appearing, and places the burden of disproving it upon the defendant in violation of the Constitution. Article 2, sec. 30, Constitution. Because said statute undertakes to prescribe what shall be conclusive evidence of guilt, and thereby usurps the judicial power of the State. White v. Flynn, 23 Ind. 46; Martin v. Cole, 38 Ia. 141; Corbin v. Hill, 21 Ia. 70; U. S. v. Klein, 13 Wall. 128; Railroad v. Simonson, 64 Kan. 802; Groesbeck v. Seeley, 13 Mich. 329; article 3, Constitution. (7) Because it is in derogation of the right of the city of St. Louis to manage its internal affairs as given by the scheme and charter of said city. Murnane v. St. Louis, 123 Mo. 479; St. Louis v. Dorr, 145 Mo. 500; K. C. v. Stegmiller, 151 Mo. 204; State v. Mason, 153 Mo. 52; State v. Mason, 155 Mo. 501; R. S. 1899, vol. 2, p. 2486. (8) The act is also unconstitutional, being in violation of the rights given by the Constitution and its charter to the city of St. Louis. St. Louis v. Dorr, 145 Mo. 499; R. S. 1899, vol. 2, p. 2486; art. 4, sec. 53, Constitution.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General, *Douglas W. Robert* and *Luther E. Smith* for the State.

(1) The point has been made that this act is unconstitutional because it applies only to such cities as have or may have exactly one hundred thousand population; in other words, in as much as it is an absurd proposition to hold that any city has exactly one hun-

dred thousand population, the act, therefore, is void. Then, too, it is asserted that because the city of St. Louis has a population of more than one hundred thousand inhabitants, said act is not applicable to citizens residing therein. This point is frivolous and absurd upon its face. The statutes provide that its provisions shall apply to the inhabitants of all cities of this State which now have or may hereafter have a population of one hundred thousand people. This is sufficient to cover all cities having a population of one hundred thousand or more. Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Marion County, 128 Mo. 427. The presumption is always indulged that the Legislature does not intend an absurdity or that absurd consequences shall flow from legislative enactments. Black, Interp. of Laws, sec. 48. In construing a statute, of whatever class it may be, whether penal or otherwise, an interpretation must never be adopted which will defeat the purpose of the act if it will admit of any other reasonable construction. Simmons v. California Powder Works, 7 Cal. 285; Thompson v. State, 20 Ala. 54; Philadelphia v. Railroad, 102 Pa. St. 190. All statutes are presumed to be constitutional and when assailed as being unconstitutional their invalidity must be shown beyond a reasonable doubt. State v. Layton, 165 Mo. 399; State v. Thompson, 144 Mo. 315; State ex rel. v. Aloe, 152 Mo. 466; State v. Hope, 100 Mo. 347; State ex rel. v. Simmons Hardware Co., 109 Mo. 118; State ex rel. v. Ransom, 73 Mo. 78. (2) Whether or not a statute be a local or a general law is to be determined by the way it affects the people as a whole, rather than by the extent of the territory over which it operates. If it affects equally all persons who come within its range, it is not a local or special law. State ex rel. v. Ins. Co., 150 Mo. 113; State ex rel. v. Yancy, 123 Mo. 391; Phillips v. Railroad, 86 Mo. 540; State ex rel. v. Wofford, 121 Mo. 61; Lynch v. Murphy, 119 Mo. 163.

(3)   The statute here invoked was evidently adopted for the purpose of guaranteeing to the people who reside in cities having a population of one hundred thousand full protection against such conditions as naturally exist on account of the smoke emitted and discharged from such enterprises. In fact, the decision of the court in 141 Mo. 375, seems to be the basis of the act in question. That decision, so far as defendant's guilt or innocence is concerned, is of no importance here, because he was charged and convicted upon a statute enacted by the legislative department of the State government. This act is a valid exercise of the police power in that it extends protection to the lives, health, comfort and quiet of all persons in cities of one hundred thousand inhabitants. Thorp v. Rutland, 27 Vt. 147; Slaughter House Cases, 16 Wall. 36; Railroad v. Ky., 161 U. S. 677; Holden v. Hardy, 169 U. S. 366; Mugler v. Kansas, 123 U. S. 661; Northwestern Fertilizer Co. v. Hyde Park, 97 U. S. 659; State v. Donnelson, 41 Minn. 82. In populous cities, largely occupied with residences, the emission of dense or thick, black or gray smoke will unavoidably cause discomfort, if not ill health, and, therefore, constitutes a proper subject of regulation under the police power of the State. Field v. Chicago, 44 Ill. App. 410; Wood on Nuisances, sec. 429; Cromp v. Lambert, L. R. 3 Eq. 409; Hyatt v. Meyers, 71 N. C. 271; Ross v. Butler, 19 N. J. Eq. 294. The case of Moses v. United States, 50 L. R. A. 532, is a case directly in point here. The Legislature has a wide discretion in the exercise of the police power of the State, and may add to or substract from the list of public nuisances recognized at common law, leaving in their discretion, as occasion may suggest or exigencies require, any limitations which have not been definitely settled. Lawton v. Steele, 152 U. S. 140; Landsberg v. District of Columbia, 11 App. D. C. 527; Powell v. Pennsylvania, 127 U. S. 678; Mugler v. Kansas, 123 U. S. 623; Crowley v. Christensen, 137 U. S. 86.

The argument is advanced that the act is unconstitu-tional, in that it discriminates against certain persons by exempting railway locomotives. This proposition was also raised in the case of Moses v. United States, supra. Steele v. Beardsley, 108 Ia. 396; Rudont v. Knox, 148 Mass. 368; Commonwealth v. Parks, 155 Mass. 531; Sawyer v. Davis, 136 Mass. 246; Powell v. Penn., 127 U. S. 678. (4) "The State Legislature has the power to pass all laws not prohibited by the Constitution of this State or the Constitution of the United States." Cass Co. v. Jack, 49 Mo. 96. "Unless prohibited by the Federal or the State Constitutions, the Legislature of this State has the same unfettered powers as belong to the British Parliament." State v. Wear, 145 Mo. 200; Ex parte Roberts, 166 Mo. 207; Morrison v. Morey, 146 Mo. 543; State v. Layton, 168 Mo. 488; State v. Addington, 12 Mo. App. 221, 77 Mo. 110; State v. Bockstruck, 136 Mo. 356; State v. Newell, 140 Mo. 282; State v. Bixman, 162 Mo. 1. (5) Laws declaring the emission of dense smoke in populous cities a public nuisance are valid. Moses v. U. S., 16 App. Cas. (D. C.) 428, 50 L. R. A. 532; State v. Noyes, 30 N. H. 279; Allison v. Richmond, 51 Mo. App. 133; Train v. Boston Co., 144 Mass. 523. (6) The proviso in the act, coming after the enacting clause, is for the benefit of the defendant and exempts him from the penalty if he comes within its terms. The proviso does not affect the validity of the act. Moses v. U. S., 16 App. Cas. (D. C.) 428, 50 L. R. A. 523; Brooklyn v. Railroad, 44 App. Div. 462, 61 N. Y. S. 33; People v. Havnor, 149 N. Y. 195; City of N. Y. v. Johns-Manville Co., 85 N. Y. S. 757, 89 App. Div. 449; Binney on Special Legislation, p. 154; Bishop on Statutory Crimes (1901), secs. 226, 229; 1 Bish. New Crim. Proc., sec. 639; State v. Shifflett, 20 Mo. 415, 64 Am. Dec. 190; State v. Cox, 32 Mo. 568; Commonwealth v. Railroad, 10 Allen 189; Commonwealth v. Hart, 11 Cush. 130; People v. Lewis, 86 Mich. 273.

GANTT, P. J.—This is an appeal from the St. Louis Court of Criminal Correction.

The information charged a violation of the act of the General Assembly of this State approved March 21, 1901 (Laws 1901, pp. 73 and 74), which makes "the emission or discharge into the open air of dense smoke within the corporate limits of cities of this State which now have or may hereafter have a population of one hundred thousand inhabitants," a public nuisance.

The act applies to the owners, lessees, occupants, managers or agents of any building, establishments or premises from which dense smoke is so emitted, and makes the same a misdemeanor punishable by a fine of not less than twenty-five dollars nor more than one hundred dollars. All such cities are expressly empowered to enact all necessary or desirable ordinances to carry out the provisions of the act.

The information duly verified was filed on the 3rd day of April, 1903. The defendant assailed the constitutionality of the law by a motion to quash, which was overruled and exceptions duly saved.

On October 5, 1903, a plea of not guilty was entered, and the cause was tried resulting in a verdict of guilty, and a fine of twenty-five dollars assessed. From the judgment and sentence imposed in pursuance of this verdict this appeal was taken.

The evidence on the part of the State tended quite conclusively to show that on or about the 18th day of March, 1903, the defendant was the manager of the Goodwin Manufacturing Company, and that on that day dense opaque smoke was emitted from the manufacturing plant of the Goodwin Manufacturing Company at intervals from 2:24 p. m. to 3:23 p. m. The evidence on the part of the State further tended to establish that there were various and numerous devices in general use for the abatement of smoke, such as down-draft furnaces, automatic stokers, brick arches, and steam jets, and including smokeless fuel, such as

hard coal. The coal generally used in and about St. Louis is bituminous or soft coal.

The device ordinarily used to abate smoke is the steam jet.

On the part of the defendant, he testified in his own behalf that he had installed various devices in the said Goodwin plant; that the boiler plant used by said company is similar to that of the ordinary boiler plant used by other manufacturing companies in St. Louis; that after using the steam jet device the smoke inspectors objected to it, and he had then tried the "Ideal" smoke consuming device and this also was objected to and he removed it and replaced the steam jets; that he had directed his fireman and engineer to be careful in the use of said device to prevent smoke; that none of the devices will work at all times; that many of them do mitigate the discharge of smoke, but do not prevent it; that the smoke is densest immediately after firing, and when the boilers are cleaned, smoke is bound to be emitted; that poor coal containing a large amount of slack aggravates the condition; that his engineer is a careful and competent man; that he has not found any device superior to the steam jet contrivance for abating smoke; that about the 18th of March, 1903, it was almost impossible to get good coal by reason of the coal miners' strike, and the railroad accomodations were inadequate; that he was a member of an association organized to seek relief against the stringent enforcement of the smoke act of 1901. Henry Piatt, the engineer, corroborated the testimony of Mr. Tower.

The court instructed the jury that if they believed from the evidence that in the city of St. Louis and State of Missouri on the 18th day of March, 1903, the defendant, George F. Tower, Jr., was the manager of the Goodwin Manufacturing Company and the said company was at the time a corporation in possession of and operating the building and premises described in the information, and that as such manager on the 18th day

of March, 1903, he did willfully and unlawfully suffer
to be emitted and discharged from. the smokestack or
chimney of said premises dense smoke into the open
air, then they would find him guilty and assess his pun-
ishment at a fine of not less than $25 nor more than
$100.

The court further instructed the jury that if they
found there was no known practicable device by which
the emission of such dense smoke could, at the time
mentioned in the information and in the testimony,
have been prevented, then they would acquit the de-
fendant. That by "practical device" is meant some
mechanical device designed for and adapted to the
abatement of smoke and which was practicable to be
used on the premises in question at the time.

Other usual instructions as to credibility of wit-
nesses, presumption of innocence, and reasonable doubt
were also given.

The defendant requested the following instruc-
tions, which the court refused, and the defendant duly
saved his exceptions to such refusal:

"1. The court instructs the jury that by the
term 'practicable device' is meant some mechanical
device by means of which the defendant could without
unreasonable expense, loss or damage to his plant or
substantial alteration thereof, have effectually abated
dense smoke.

"2. The court instructs the jury that before they
can find the defendant guilty of the offense with which
he is charged, they must believe and find from the evi-
dence beyond a reasonable doubt that the defendant
permitted dense smoke to be emitted or discharged
from the premises mentioned in the information within
the corporate limits of the city of St. Louis in such
quantities and for such a length of time as to con-
stitute an annoyance or injury either to the persons or
property of some of the inhabitants of said city, and

unless they so find from the evidence beyond a reasonable doubt, the defendant should be acquitted.

"3. The court instructs the jury that under the evidence in this case they must find the defendant not guilty.

"4. The jury are instructed that the burden of proof in this case is upon the State and before they can find the defendant guilty, the jury must from the evidence be satisfied beyond a reasonable doubt that the defendant permitted dense smoke to be emitted or discharged from its premises and they must further be satisfied beyond a reasonable doubt that there was no known practical device that would have prevented the emission of such smoke at the very time such smoke was supposed to be emitted."

I. While this cause is here principally upon the constitutionality of the law of 1901, there are other propositions advanced which we must meet. The first is that granting the said act to be constitutional, it does not apply to St. Louis, which is a city of over three hundred thousand population, because the act on its face applies to "cities of this State which now have or may hereafter have a population of one hnudred thousand inhabitants." That is to say, it applies to those cities only which have *exactly* one hundred thousand inhabitants, no more, and no less. This contention is predicated on the rule of construction of criminal statutes which requires that they be construed strictly against the State, and liberally in favor of the citizen, and that we must adhere to the strict letter of the law. While the rule of strict construction as to criminal statutes is correct, our courts adopt Lord MANSFIELD's view "that tenderness does not require such a construction of words as would tend to render the law nugatory and ineffectual and destroy or evade the very end of it, nor does it require that we should give in to such nice, strained and critical objections as are contrary to its true meaning and spirit." A city having a

population of over three hundred thousand inhabitants is a city having a population of one hundred thousand inhabitants. The greater includes the less. The plain obvious meaning of the words "having a population of one hundred thousand inhabitants." is having that number of people even if they have many more than that.

This we regard as too clear for argument; indeed, it is self-evident.

II. Proceeding now to the claims that the statute is unconstitutional, we will consider these in the order of the brief of the defendant.

It is first insisted that the Legislature has invaded the judicial province in declaring the emission of dense, opaque smoke into the open air of cities having a population of one hundred thousand inhabitants a nuisance, for the reason that such conduct is not inherently a nuisance. In a word, we assume that the basis of this contention is that, because at common law thick dense smoke was not deemed a nuisance *per se,* but depended on the character of the smoke, the quantity, the location and the circumstances, therefore it was not competent for our General Assembly to declare the emission or discharge into the open air of dense smoke within a city of one hundred thousand inhabitants a nuisance.

The power of the General Assembly to pass all needful laws except when restricted by the State or Federal Constitution is plenary, and the Legislature has the power to declare places or practices to the detriment of public interests or to the injury of the health, morals or welfare of the community, public nuisances, although not such at common law. The General Assembly in the exercise of the police power may declare that a nuisance which before was not a nuisance.

Such an act is properly within that power which is conferred by the Constitution of this State upon the General Assembly in the distribution of the powers of

our State government. [Lawton v. Steele, 119 N. Y. 226; Mugler v. Kansas, 123 U. S. 623; Mathews v. Railroad, 121 Mo. 298; Moses v. United States, 50 L. R. A. 532.]

Because at common law smoke was not a nuisance *per se* is no reason why the people of this State, through their representatives in the legislative department, may not change that law, and make it a nuisance *per se* when the location and surrounding circumstances in their opinion and judgment require it. The General Assembly may adopt new regulations from time to time as the occasion and necessity may require. The State has no higher function than the duty to provide for the safety and comfort of its citizens.

There is nothing unreasonable in this act. Even at common law smoke alone in certain circumstances constituted a nuisance, that is to say, when it produced a tangible injury to property as by the discoloration of buildings, injury to vegetation, the discoloration of furniture, and like cases. [1 Wood on Nuisances, sec. 505, and cases cited; Whalen v. Keith, 35 Mo. 87; Cartwright v. Gray, 12 Grant's Chcy. 399.]

It was entirely competent for the Legislature to take cognizance of the fact known to all men that the emission and discharge of dense smoke into the atmosphere of a large and populous city is of itself a nuisance, a constant annoyance to the general public of such city and one calculated to interfere with the health and comfort of the inhabitants thereof, and to declare it a nuisance *per se*.

The question in St. Louis v. Heitzeberg Packing Company, 141 Mo. 375, was not whether the General Assembly had the power to enact a statute making the emission or discharge of dense smoke in the city of St. Louis a nuisance *per se*, but whether said city in the absence of such a law by the State and in the absence of such a power in its charter could declare such emission of smoke in that city a nuisance *per se*, and it was

held that the city had no such power; that it was not within the powers conferred by its charter. We have no hesitancy in holding that it was entirely competent for the Legislature to declare the emission of dense smoke in the open air in a city of one hundred thousand inhabitants a nuisance *per se*.

In Lawton v. Steele, 152 U. S. l. c. 136, the Supreme Court of the United States says: "The extent and limits of what is known as the police power have been a fruitful source of discussion in the appellate courts of nearly every State in the Union. It is universally conceded to include every thing essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." The General Assembly, charged as it is with this power and duty, is vested with a very wide discretion and liberty of choice in the means to be adopted to abate the difficulty and nuisance.

It had the power and must be presumed to have inquired into the actual conditions as to the effect of emitting large quantities of dense smoke in cities having a population of one hundred thousand people and the resulting injury to the health and comfort of the public therein, as well as the probable injury to the property-owners in requiring them to use smoke consuming devices, and the discretion exercised by them within their conceded powers we have no power to control unless it involves a violation of some right protected by the Constitution. [Cass Co. v. Jack, 49 Mo. 196; State v. Wear, 145 Mo. l. c. 200; Ex parte Roberts, 166 Mo. 207; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Morrison v. Morey, 146 Mo. 543; Holden v. Hardy, 169 U. S. l. c. 392; Com. v. Alger, 7 Cush. 53-84; Lansburgh v. Dist. of Columbia, 11 D. C. App. Cas. 512; State v. Beardsley, 108 Iowa 396; State v. Layton, 160 Mo. 474.]

III.   It is next insisted that it is a special law and for that reason a violation of article 4, section 53 of the Constitution of Missouri of 1875.

That it is a general law in that it applies alike to all cities having or which may hereafter have a population of one hundred thousand inhabitants and to all persons residing therein is clear from its reading.   But it is insisted that it is obnoxious class legislation; that if it is a nuisance to emit and discharge dense smoke in a city of one hundred thousand inhabitants it is equally so in a city of one-half or one-quarter or one-tenth of that size.   But is it for the courts to say that there is no reasonable distinction between the emission of smoke into the air of a densely populated city and a city sparsely settled, whose inhabitants occupy larger tracts?   If there is ground for dispute of this assumption of defendant, then it is for the Legislature to determine that question for itself.   "The constitutionality of a law is not to be determined upon a question of fact in each case, but the courts determine for themselves upon the fundamental principles of our Constitution, which vests the legislative power in the General Assembly, and the rule of construction adopted by our court is 'that an act of the Legislature is not to be declared void, unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt.'' [State v. Layton, 160 Mo. 498-499; Cooley on Const. Lim. (6 Ed.), p. 216; State v. Nelson, 39 N. E. 22.]

But we think the classification is not an unreasonable one.   If one corporation or individual may with impunity emit and discharge volumes of dense opaque smoke into the air of a city of one hundred thousand people then all other corporations, manufactories and citizens may do likewise, and it is obvious that the proportion of smoke and discomfort will be much greater than if manufactories and citizens do the same things in less populous cities where experience shows the de-

mand for such works is much less, and the consequent accumulation of smoke correspondingly less.

In Ex parte Lucas, 160 Mo. l. c. 236, this court In Banc said: "An act that relates to all cities containing 50,000 inhabitants is a proper classification of natural or artificial persons or subjects, and different regulations for people congregated in such large bodies from those governing people of smaller aggregation, are not illegal or unconstitutional under the Federal or State Constitutions." [Missouri v. Lewis (Bowman's case), 101 U. S. 22.]

In State v. Hayes, 88 Mo. 344, this court held that the allowance to the State of more peremptory challenges in criminal cases in cities containing over 100,-000 inhabitants than was allowed in all other circuits in the State was not unconstitutional as class legislation and that judgment was affirmed by the Supreme Court of the United States. [Hayes v. Missouri, 120 U. S. 68.]

The Legislature had the right to inquire into the relative evils resulting from the emission of dense smoke in large and populous cities. The suppression of the nuisance was clearly a legislative power and the whole matter was in the discretion of the Legislature and it must be presumed that its classification was based upon satisfactory evidence. Accordingly we hold that in providing that the law should be confined in its operation to cities of one hundred thousand inhabitants, it did not transcend its authority.

But it is further argued under this objection that the act is class legislation in that it exempts owners of premises who may be able to show to the satisfaction of the court or jury trying the facts that there is no known practicable device, appliance, means or method by application of which to his building or premises, the emission or discharge of the dense smoke complained of could have been prevented. The question is, does this exception or proviso render the act unconstitutional?

It is observed, first, that the defense permitted by this statute is not confined to any particular person or class, but is open to every citizen who can show that there is no known practicable device or appliance by which the emission of dense smoke can be prevented. It was open to defendant and he availed himself of it and undertook to show that there was no device or appliance known by which he could have prevented the emission of thick dense smoke from his premises and that question was duly submitted to the jury as a question of fact and determined adversely to his contention.

In construing this exception or proviso the history of this legislation may be taken into consideration. The case of the City of St. Louis v. Heitzeberg Pack. Co., 141 Mo. 375, was decided by this court in November, 1897. In that case an ordinance of the city of St. Louis declaring the emission into the open air of dense black smoke or thick gray smoke within the city of St. Louis a nuisance was before us, and it was held that the city under its charter, and in the absence of any statute of this State declaring such emission to be a nuisance, had no authority to pass and enforce such an ordinance. At that late date it was admitted of record by the special counsel for the city that up to that time no device or means was known or had been invented whereby such smoke could under all circumstances be suppressed or prevented, and this court held said ordinance unreasonable because it sought to punish the citizen for creating smoke ''in advance of any known device for preventing it.''

When the Legislature came to consider this question, doubtless it was aware of the judgment of this court in that case, and seemingly concurred in the view that while such dense smoke was unquestionably a nuisance, still as the opponents of the measure insisted there were no known practicable appliances or devices yet discovered or obtainable whereby the nuisance could be prevented and those who favored it insisted there

were appliances whereby it could be prevented, the Legislature deemed it best to allow such defense, in all cases, to be heard and determined by the court or jury trying the case. If, as was contended by those who favored the enactment, there were numerous practicable devices by which the objectionable smoke could be prevented or abated, the result would be that there would be no exemptions. If on the other hand it could be shown there were none, then it was deemed unjust to punish the citizen or corporation pursuing an otherwise lawful business for an act which he or it could not prevent.

As already said, does the permitting of this defense to all persons alike render the whole act unconstitutional on the ground that it is class legislation in favor of those persons who show they can not prevent by any known appliance the emission of dense smoke from their buildings or premises?

Since the decision in the Heitzeberg case it would seem from the evidence that there has been much progress made in smoke preventing appliances. The witnesses testified in this case that there were numerous devices for this purpose that were practicable. But can it be a valid objection to the law that at the time of the passage of the act there was doubt in the mind of the Legislature on this subject? The policy of adjusting a regulation or law to meet the conditions existing is a matter peculiarly within the province of the legislative department.

In the well-considered case of Moses v. United States, 16 D. C. App. Cas. 428, an act of Congress making it a misdemeanor for the owner, lessee, etc., of any building to issue or emit thick or dense black smoke from the smoke-stack or chimney of such building was under consideration, and among other grounds it was assailed as class legislation because the act excluded from its operation "chimneys of buildings used exclu-

sively for private residences." To this contention the
court responded: "We can readily apprehend that
there may be a very great difference between the quan-
tity and quality of the smoke emitted from the chim-
neys of private dwellings, and from those connected
with engines, steam boilers, and furnaces used in
buildings devoted to manufacturing purposes, or in
the large buildings occupied by many persons,
that require an immense consumption of fuel." The
act also was restricted to *stationary* engines, boilers,
etc., and it was insisted that the exemption of *portable*
engines rendered it class legislation, but the court said
as to that also, "The distinction made between station-
ary engines and portable ones would, on its face, like-
wise seem not to have an unreasonable foundation.
Probably the only portable engines in use would be fire
engines, steam rollers, and railway locomotives. Of
the two former it is sufficient to say that they are neces-
sary agencies for the promotion and protection of para-
mount public interests, and are in use for such neces-
sary periods of time and in such places only as exi-
gencies may demand. The railway engine performs a
different function, as confined to a space set apart for
its use, and besides is not constantly engaged in diffus-
ing its smoke from a permanent location."

In City of Brooklyn v. Railroad, 61 N. Y. Supp. 33,
44 App. Div. 462, the act of the Legislature of New
York (sec. 1, chap. 954, Laws 1895) was challenged on
the ground that the act prohibiting the use of soft coal
in factories, engine-rooms, or electrical stations within
a radius of four miles of the city hall in Brooklyn *ex-
cept for the purpose of heating or welding iron or steel,*
was class legislation. In an exhaustive opinion it was
held the exception did not make the act unconstitu-
tional. The same act was sustained in New York v.
Johns-Manville Co., 89 App. Div. (Hun) 449.

In People v. Havnor, 149 N. Y. 195, an act to
regulate barbering on Sunday, which prohibited a bar-

ber to follow his vocation on Sunday, except that in the city of New York and in Saratoga Springs such business might be carried on until one o'clock of the afternoon of that day, was held a valid exercise of the police power, and did not violate the 14th amendment to the Federal Constitution, nor was it class legislation.

The case of Moses v. United States, 16 D. C. App. Cas. 428, came under review in Bradley v. Dist. of Columbia, 20 D. C. App. Cas. 169, and was sustained, but it is of peculiar interest in connection with the contention that the proviso we are considering renders the act of 1901 unconstitutional as class regulation. The act of Congress made no exception in cases where an owner or manager was unable to find any appliance or device which would prevent the emission of dense smoke, but it was attempted to show in that case that there was no known appliance or device which would prevent the emission of dense smoke, and while the court held that the evidence offered was properly excluded, it uses this significant language: "As the operation of the furnaces in large buildings for purposes of heating, power, etc., is unquestionably necessary to the enjoyment of their ownership, any regulation with which it would be impossible to comply, by the use of any known and accessible fuel, would be beyond the power of Congress to enact. But an act of Congress in the exercise of its ordinary police power, as this appears to be on its face, is not to be lightly set aside as unreasonable and oppressive."

In the Heitzeberg case, 141 Mo. l. c. 388, we said of the ordinance of the city under review: "It seems to us that this ordinance which makes no reasonable allowance for the regulation of this smoke, but essays *in advance of any known device for preventing it* to punish all who produce it to any degree whatever, is wholly unreasonable."

The language last quoted of course referred to the power of a municipal corporation and not to the Gen-

eral Assembly, but broad as the police power of our Legislature is it is not unlimited. As said by Mr. Justice HARLAN in Mugler v. Kansas, 123 U. S. l. c. 661, "It does not follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police powers of the State. There are, of necessity, limits beyond which legislation can not rightfully go. . . . If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

It is too plain for argument that it was within the power of the Legislature of Missouri to enact all reasonable regulations for the suppression and prevention of the accumulation of vast quantities of dense smoke in our populous cities, and they did so by the act of 1901, but it is to their credit that they were careful to abstain from even a semblance of oppression and an invasion of the property-right of owners and managers of buildings to heat the same or to maintain engines and boilers for the manufacture of wares and merchandise, by providing that if there were no known practicable devices or appliances by which dense smoke so generated could be prevented, they should not be punished therefor. It was entirely competent for the Legislature to make this exception, as it did, available not to a certain class, but to every citizen or corporation charged with a violation of the said smoke act. Indeed it would seem on the strength of the Moses case such a defense might be made even in the absence of such a proviso, and if so, certainly an express permission in the statute would not render it obnoxious to the charge of class legislation. Our conclusion is then that the proviso did not render the act unconstitutional as class legislation.

IV. Nor does the statute violate the 14th amendment to the Federal constitution because by implication it omits from its operation locomotive engines and steamboats. Conceding that locomotive engines and steamboats are not included in the term of "any building, establishments or premises," the conclusion reached by the court in Moses v. United States, 16 D. C. App. Cas. 428, that there is a reasonable basis for the classification of stationary engines and buildings, in one class, and portable engines in another, appears to us to be sound and sustainable on reason and authority. Such was also the opinion of the Supreme Court of Michigan in People v. Lewis, 86 Mich. 273.

As to the further contention that brick-kilns do not fall within the application of the statute, we think it is not well taken. The act by its terms includes any *building, establishment or premises* from which dense smoke is so emitted or discharged" and is broad enough to include brick-kilns.

The only remaining proposition is that the Legislature could not declare the emission of dense smoke into the open air of a city of one hundred thousand inhabitants a nuisance without qualifying it by adding to it that such smoke must injure the property in the neighborhood or affect the health or interfere with the comfort of the citizens of the neighborhood. We have already ruled that the Legislature, charged with the duty of guarding the public interests and vested with a wide discretion and liberty of choice, must be presumed to have inquired into and duly considered the effect, present and prospective, of the continual emission, constantly or at intervals, of dense smoke, upon those public interests in respect to safety, comfort and cleanliness. In State v. Whitaker, 160 Mo. l. c. 72, this court said: "It can not be questioned that in the exercise of its police power the Legislature may enact laws to protect the health and safety of our citizens by all reasonable regulations, and when a given subject is within

that power, the extent to ·which it is to be exercised is within the discretion of the Legislature.''

The power to declare what is and shall be a public nuisance is clearly a legislative one, and the act in question is clearly an exercise of the police power, and there is nothing in the act which smacks of oppression, but on the contrary it accords with the universal experience that dense smoke· emitted in a large, populous and crowded city is a nuisance, though it may not have been previously so held at common law or so declared by statute.

An act of the Legislature is not to be declared void by the courts unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. [State v. Layton, 160 Mo. 1. c. 488.]

This contention as the others must be held untenable.

Finding no error in the record the judgment of the Court of Criminal Correction is affirmed.

All concur, except *Burgess, J.,* absent.