## THE STATE v. THE PASSAIC COUNTY AGRICULTURAL SOCIETY.

1. If a corporation appears to indictment by an attorney of the court, it is not necessary to take proceedings under the statute to secure an appearance.
2. The burden will be on the corporation to show that the appearance by the attorney is unauthorized.
3. It need not appear in the record that the trial court ordered the clerk to enter an appearance and endorse the plea of not guilty. It will be presumed that it was done.
4. The Quarter Sessions is not an inferior court in the sense that it must in all respects show its jurisdiction.
5. After a demurrer to an indictment is overruled, the court may pronounce judgment, unless leave is expressly given to answer over.
6. A corporation is indictable for keeping a disorderly house.

In error to Passaic Quarter Sessions.

Argued at June Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and KNAPP.

For the plaintiff in error, *Robert I. Hopper* and *Samuel Kalisch.*

For the state, *William B. Gourley.*

The opinion of the court was delivered by

VAN SYCKEL, J. The defendant was convicted in the Passaic Quarter Sessions for keeping a disorderly house.

In addition to the alleged jurisdictional defect, and the alleged defects in the record which have been discussed in the case of George H. Engeman et al. *v.* The State, decided at the present term of this court, other errors are assigned for reversal which it is necessary to consider.

In the first place it is denied that the trial court obtained jurisdiction of the corporation.

Section 80 of the Criminal Procedure act provides that when the summons or notice to the corporation shall be returned summoned or served, the corporation shall be considered as in court, and as appearing to said indictment, and the court shall order the clerk to enter an appearance for said corporation and endorse the plea of not guilty upon said indictment.

This statute applies only to involuntary appearances by corporations.

It has never been doubted that corporations could appear and plead to indictments by attorney, and the practice has always prevailed to permit attorneys of our courts to appear for corporations they claim to represent. In fact, corporations cannot appear in person, they must appear by attorney.

In this case the record shows that Robert I. Hopper, one of the practicing attorneys of this court, appeared and filed a demurrer to the indictment. If he had appeared, knowing that he had no authority to do so, it would have been in contempt of the trial court. His appearance was presumably lawful, otherwise the trial court should, in all cases where a corporation appears by attorney, require him to establish his right to do so by competent evidence. Such has never been the practice; the burden is on the corporation to show that the appearance was unauthorized.

As the record stands, it sufficiently appears that the defendant was in court to answer to the indictment.

It need not appear in the record that the trial court ordered the clerk to enter an appearance for said corporation and endorse the plea of not guilty. That, also, was presumably done.

The Quarter Sessions is not an inferior court in the sense that it must, in all respects, show its jurisdiction. *Gray* v. *Bastedo,* 17 *Vroom* 453.

In the second place, it is objected that sentence was pronounced after the demurrer was overruled, without giving the defendant corporation an opportunity to plead not guilty.

Lord Hale says : " If a person be indicted or appealed of felony and he will demur to the appeal or indictment, and if it be judged against him he shall have judgment or be hanged, for it is a confession of the indictment." 2 *Hale P. C.* 257.

In *King* v. *Gibson,* 8 *East* 107, the court agreed that in criminal cases, not capital, if the defendant demur to an indictment, the court will not give judgment against him to answer over, but final judgment.

Mr. Bishop says : " With us, in misdemeanor, the judgment against a defendant on his demurrer is final, unless he has leave to withdraw it to answer over." 2 *Bish. Cr. Pro.,* § 783, and cases there cited.

Such is the established practice in New Jersey. The defendant may ask leave to answer over, and under ordinary circumstances it will be granted ; but if no such request is made, judgment will be pronounced.

The record does not show that any request was made by the defendant to answer over in this case after the demurrer was overruled, and, therefore, final judgment was properly passed.

In days past, when the death penalty attached to crimes comparatively insignificant, common humanity constrained the courts to be astute to seize upon the slightest ground for reversing convictions ; but under our system of criminal jurisprudence, which shields the defendant by the presumption of innocence, by a liberal right of peremptory challenge

and by the necessity of a unanimous verdict, and where the penalty denounced against offences is humanely graduated according to their character, there should be clear error to constitute a mistrial.

*Thirdly.* It is urged that a corporation cannot be indicted for keeping a disorderly house.

Some of the earlier cases held that trespass or case would not lie against a corporation for a private nuisance, but that doctrine has long since been exploded. In early days when corporate bodies were few, it was a matter of comparatively small consequence whether such an action could be maintained.

In these days, however, when the great concerns of business are carried on chiefly through these artificial persons, it would be most oppressive to hold that they are not amenable to answer for such wrongs as subject natural persons to prosecution.

Mr. Wharton says that no good reason can be assigned why the same acts, for which these bodies are subject to civil suit, may not equally be the basis of criminal proceedings when they result in injury to the public at large. 1 *Whart. Cr. L.,* § 87.

*The Queen* v. *The Great North of England Railway Co.,* 9 *Q. B.* 316, is a leading and instructive case on this subject, showing the advance which the doctrine holding corporations criminally liable had made at the date of that adjudication.

The earlier cases are cited there, and the summing up of Lord Chief Justice Denman shows how firmly he held to the idea, that upon reason and policy an indictment could be supported against a corporation for misfeasance as well as for non-feasance.

He entertained no doubt that a corporation may be guilty, as a corporate body, of commanding acts to be done to the nuisance of the community at large.

In reply to the suggestion that the individuals who concur in doing the inhibited acts on behalf of the corporation may

be indicted, he said, that while of that there was no doubt, there can be no effectual means for deterring from the commission of criminal acts, except the remedy by an indictment against those who truly commit them—that is, the corporation acting by its majority; and that there is no principle which places them beyond the reach of the law for such proceedings.

In *Commonwealth* v. *Proprietors of New Bedford Bridge,* 2 *Gray* 339, the Massachusetts Supreme Court adopted the same view, declaring that the tendency of the more recent cases in courts of the highest authority has been to extend the application of all legal remedies to corporations, and assimilate them, as far as possible, in their legal duties and responsibilities to individuals.

Mr. Beach, in his treatise on Private Corporations (Vol. II., p. 458), says that the tendency of judicial decision has been to extend the liability of corporations in civil actions for the misfeasance of their agents, so that it is well settled that they may be held liable for libel, malicious prosecution and for assault and battery committed by their agents in the performance of their duties, and in view of the fact that they may in such suits be subjected to exemplary or punitive damages, the assertion that they cannot be held liable to indictment for any offences, which derive their criminality from evil intent, may well be questioned.

The very basis of the action for libel or for malicious prosecution is the evil intent, the malice of the party defendant. It is difficult, therefore, to see how a corporation may be amenable to civil suit for libel and malicious prosecution and private nuisance, and mulcted in exemplary damages, and at the same time not be indictable for like offences, where the injury falls upon the public.

That malice and evil intent may be imputed to corporations has been repeatedly adjudged. *Morton* v. *Metropolitan Life Ins. Co.,* 103 *N. Y.* 645; *Reed* v. *Home Savings Bank,* 130 *Mass.* 443; *Buffalo Company* v. *Standard Oil Co.,* 106 *N. Y.* 669.

The case last cited was an action to recover damages caused by conspiracy.

So far as this question has been agitated in New Jersey, our decisions have been in line with the cases which have been cited. *State* v. *Morris Canal Co.*, 2 *Zab.* 537; *State* v. *Godwinville, &c.*, 20 *Vroom* 266; *McDermott* v. *The Evening Journal*, 14 *Id.* 488; *Brokaw* v. *New Jersey R. R. Co.*, 3 *Id.* 328.

The question whether criminal intent may be imputed to a corporation is not necessarily involved in the discussion of the case before us.

The habitual indulgence in the vicious practices on the premises of the defendant corporation stamps it as a disorderly house, without regard to the intent which prompted the disorder.

In my opinion, the judgment below should be affirmed.