and assessment for paving or repaving the streets of said city; and, in case the relators accept such offer, neither party shall recover costs of this proceeding as against the other.   All concur.

Assessment complained of vacated and set aside, with $50 costs and disbursements to the relators, unless within 30 days the relators elect to accept the offer of the defendants to deduct the sum of $2,333.33 from the total cost of the improvement, in which case the assessment may be amended by deducting said sum from the total amount thereof, and, as amended, such assessment is in all things confirmed, without costs to either party as against the other.   All concur.

(44 App. Div. 462.)

## CITY OF BROOKLYN v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department.   November 21, 1899.)

1. PARTIES—ACTION FOR STATUTORY FINE.
    Action for fine under Laws 1895, c. 322, § 1, prohibiting the burning of soft coal in factory furnaces in the city of B., subject to a fine "to be collected by the proper city authorities and placed in the county treasury," is properly brought by the city, though Code Civ. Proc. § 1893, provides that, where a penalty is given by statute to a person aggrieved by the act of another, the person to whom it is given may sue therefor; Laws 1895, c. 954, § 1, providing that the county and city shall be one body corporate, by the name of the "City of B.," and that all property and demands shall belong to the city, and section 4 making the county treasurer the treasurer of the city.

2. CONSTITUTIONAL LAW.
    Const. U. S. Amend. 14, is not violated by Laws 1895, c. 322, § 1, inhibiting use of soft coal in factories within a certain distance of the center of a city, except for purposes of heating or welding iron or steel.

3. SAME—EXCLUSIVE PRIVILEGES.
    Const. art. 3, § 18, forbidding any local bill which shall grant to any one "any exclusive privilege, immunity or franchise," is not contravened by Laws 1895, c. 322, § 1, inhibiting use of soft coal in factories within a certain distance of the center of the city of B., "except for the purpose of heating or welding iron or steel"; there being no grant of right, but merely imposition of restrictions, with exceptions.

4. SAME—POLICE POWER.
    Laws 1895, c. 322, § 1, inhibiting use of soft coal in factories, engine rooms, or electrical stations within four miles of the city hall in Brooklyn, is a proper exercise of the police power.

Appeal from Kings county court.

Action by the city of Brooklyn against the Nassau Electric Railroad Company.   From a judgment of the county court affirming a judgment of a justice of the peace for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Henry Yonge, for appellant.

Jerome W. Coombs (William J. Carr, on the brief), for respondent.

GOODRICH, P. J.   The action was brought to recover from the defendant a penalty of $100 for using soft coal in contravention of

"An act to prevent the burning of soft coal in factories in the city of Brooklyn." Chapter 322, Laws 1895. Section 1 reads as follows:

"No factory, engine-room or electrical station shall use what is known as soft coal for fuel in the furnaces of such factories, engine-room or electrical stations within a radius of four miles of the city hall in the city of Brooklyn, except for the purpose of heating or welding iron or steel; any violation of this act shall subject the proprietors or corporation that shall violate it to a fine of not more than one hundred dollars, the same to be collected by the proper city authorities and placed in the county treasury, and such authorities shall see that this law is enforced."

The defendant is alleged and admitted to be a street-railroad corporation, which on July 15, 1897, maintained and operated furnaces, an engine room, and electrical station at Thirty-Ninth street and Second avenue, Brooklyn, within a radius of four miles of the city hall. The complaint also alleged that the defendant used soft coal for fuel in such furnaces, and that it was not used for the purpose of heating or welding iron or steel. This was denied in the answer, but at the trial before the justice of the peace the defendant stipulated "that he will not impose upon the plaintiff the necessity to prove that the soft coal used by the defendant was not being used for the purpose of welding iron and steel."

The answer alleged that the plaintiff is not the proper party to bring the action, citing section 1893 of the Code of Civil Procedure, which provides that "where a penalty * * * is given, by a statute, to a person aggrieved by the act * * * of another, the person to whom it is given, may, if it is pecuniary, maintain an action to recover the amount thereof," and section 1984, which provides that certain actions prescribed by the title of which it is a part must be brought in the name of the people of the state. It is perhaps sufficient to say that these two sections are in different chapters and titles, viz. section 1893 in chapter 15, tit. 4, and section 1984 in chapter 16, tit. 1. The defendant's counsel is therefore left to his contention that by virtue of section 1893 the action, being for a penalty given by a statute, should be brought in the name of the county treasurer. The statute provides, however, that the penalty is to be collected by the proper city authorities, and by them placed in the county treasury. Laws 1895, c. 954, § 1, provides that the county and city shall be one body corporate, by the name of the "City of Brooklyn," and that all property, claims, and demands shall vest in and belong to the city; and section 4 makes the county treasurer the treasurer of the city. We think the action was properly brought in the name of the city.

The main contention of the defendant is that because the statute "grants immunity from its provisions, and an exclusive privilege, to persons and corporations engaged in the business of heating and welding iron and steel," and is a "local act," it violates section 18 of article 3 of the state constitution and section 1 of the fourteenth amendment to the federal constitution. The latter objection is taken out of our consideration by the Slaughter-House Cases, 16 Wall. 36, 21 L. Ed. 394, where the supreme court of the United States held that the first clause of the fourteenth amendment was primarily intended to confer citizenship on the negro race, and secondly to give

definitions of citizenship of the United States and citizenship of the states, and that the privileges and immunities of citizens of the United States are those which arise out of the nature and essential character of the national government, the provisions of its constitution, or its laws and treaties. It has been held also that this amendment has no relation to corporations, as they are not "citizens," within the amendment. People v. Roberts, 91 Hun, 158, 36 N. Y. Supp. 368. The section of the state constitution forbids the legislature to pass a local bill "granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever." The first answer to this objection is that the statute does not grant to any one the right to use soft coal. These words, "except for the purpose of heating or welding iron or steel," are used in the act as an exception to cases covered by it. They are simply restrictive of the operation of the statute. Until the passage of this act the use of soft coal was not unlawful, for the reason that it was not prohibited by any statute. Thus, in Live-Stock Dealers' & Butchers' Ass'n v. Crescent City Live-Stock Landing & Slaughter-House Co., 1 Abb. (U. S.) 388, 398, Fed. Cas. No. 8,408, Judge Bradley said:

"It is one of the privileges of every American citizen to adopt and follow such lawful industrial pursuit—not injurious to the community—as he may see fit, without unreasonable regulation or molestation, and without being restricted by any of those unjust, oppressive, and odious monopolies or exclusive privileges which have been condemned by all free governments. It is also his privilege to be protected in the possession and enjoyment of his property so long as such possession and enjoyment are not injurious to the community, and not to be deprived thereof without due process of law."

There is no doubt of the right of the legislature, in the lawful exercise of the police power, to regulate trade and methods of trade; but, as was held in Re Jacobs, 98 N. Y. 98, "its exercise is not beyond the reach of judicial inquiry." Chancellor Kent said:

"Unwholesome trades, slaughter houses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials, and the burial of the dead, may all be interdicted by law, in the midst of dense masses of population, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community." 2 Kent, Comm. 340.

This sentence was cited and approved by the supreme court in the famous Slaughter-House Cases, supra. That court said (page 62, 16 Wall., and page 404, 21 L. Ed.):

"This is called the 'police power.' * * * This power is, and must be, from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly-populated community, the enjoyment of private and social life, and the beneficial use of property."

The opinion of Mr. Chief Justice Redfield, of the supreme court of Vermont, in Thorpe v. Railroad Co., 27 Vt. 140, has often been cited and approved. He said (page 150):

"There is also the general police power of the state, by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the legislature to do which no question ever was, or, upon acknowledged general principles, ever can be, made, so far as natural persons are concerned."

Judge Cooley, in his work on Constitutional Limitations, at page 742, says:

"The state has also a right to determine what employments shall be permitted, and to forbid those which are deemed prejudicial to the public good."

Exercises of the police power which might seem to come within the objections raised by the defendant's counsel have been approved by the courts. Familiar examples are numerous. In Health Dept. of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833, it was held that a provision requiring tenement houses previously erected in the city of New York to be furnished by the owners with certain quantities of water was a proper exercise of the police power. People v. Havnor, 149 N. Y. 195, 43 N. E. 541, was a case where the court declared constitutional an act which made it a misdemeanor to carry on the business of a barber on Sunday, except that this might be done in the city of New York and the village of Saratoga Springs up to 1 o'clock of the afternoon of that day. The precise point raised in the present appeal was raised in that case,—that the act was invalid under the fourteenth amendment to the federal constitution, because it denied to barbers who did not reside in the city of New York or the village of Saratoga Springs the equal protection of the laws. The court said (page 205, 149 N. Y., and page 544, 43 N. E.):

"That amendment does not relate to territorial arrangements made for different portions of a state, nor to legislation which, in carrying out a public purpose, is limited in its operation, but, within the sphere of its operation, affects alike all persons similarly situated. * * * The statute treats all barbers alike within the same localities, for none can work on Sunday outside of New York and Saratoga, but all may work in those places until a certain hour. All are therefore treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

In City of Buffalo v. New York, L. E. & W. R. Co., 152 N. Y. 276, 46 N. E. 496, the court held valid a city ordinance, duly passed under legislative authority, requiring the speed of railroad trains in certain parts of the city to be limited to six miles per hour, and that the exemption of other parts of the city from the regulation was proper. The fire laws which forbid the erection of a certain class of buildings in one part of a city, and not in other parts, are too common to require reference to authority.

It seems to us, therefore, that it is well within the police power of the state for the legislature to declare that the burning of soft coal within certain prescribed limits of the city is detrimental to the public welfare and should be forbidden; and, under the authorities cited, we hold that the act in question was not inhibited by the sections of the constitutions of the United States and the state of New York referred to by defendant's counsel. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.