MORRIS ROBESON, DEFENDANT IN ERROR, v. JOHN P.
WHITNEY, PLAINTIFF IN ERROR.

Submitted July 13, 1908—Decided November 16, 1908.

In an agreement of apprenticeship binding the apprentice to serve as
such for twelve hundred actual working days, which throughout
the indenture were referred to as a term—*Held*, that the above
phrase should be construed to mean that the service shall con-
tinue through a term or period within which there are twelve
hundred days, exclusive of Sundays and holidays, and not to mean
twelve hundred days upon which the apprentice should actually
perform work for the master.

On error to the Supreme Court.

For the plaintiff in error, *Francis B. Davis* and *Austin H.
Swackhamer.*

For the defendant in error, *David O. Watkins* and *John
Boyd Avis.*

The opinion of the court was delivered by

VOORHEES, J. The judgment removed by this writ was
founded upon a balance of moneys due from the defendant
to the plaintiff upon an agreement of apprenticeship, of
which the following is a copy:

"This indenture, made the twenty-fourth day of January,
A. D. nineteen hundred and two, between Morris Robeson,
aged twenty-one years, on the thirtieth day of November,
nineteen hundred and one, of Glassboro, in the County of
Gloucester and State of New Jersey, party of the first part,
and J. P. Whitney, of Glassboro, in the County of Glouces-
ter and State of New Jersey, party of the second part.

"Witnesseth, that the said party of the first part has of his
own free will and accord, bound himself as an apprentice to
said party of the second part in the art, trade and occupation
of a glass-blower, with him to serve as an apprentice for

twelve hundred·actual working days, during which term the said apprentice, his master faithfully shall serve, his secrets keep, his lawful commands and the lawful commands of his agent, manager and employee everywhere obey. He shall do no damage to his said master, nor see it done by others, but he, to the utmost of his power, shall forthwith give warning to his said master of the same. He shall not waste the goods of his said master nor lend them unlawfully to any. He shall not absent himself from his said master's service unlawfully. He shall not during said term join or become a member of any labor organization. At all times and in all things as a faithful, industrious and obedient apprentice he shall behave and demean himself towards his said master, and his said agent, manager and employee.

"And the said party of the second part in consideration of the faithful services of the said apprentice in the art of glass-blowing, as said art is carried on in the glass factories in New Jersey, and during said term find and provide for the said apprentice or furnish him with the means to find and provide for himself good and sufficient clothing, diet and lodging, the moneys to be advanced therefor not to exceed one-third the wages of an ordinary workman for the same class of work, but subject in all respects to the stipulations hereinafter mentioned, to which said party of the first part hereby assents and agrees.

"That in case said party of the first part shall absent himself from the service of the said party of the second · part without previous written permission from him or his authorized agent or manager, except only in case of sickness of said party of the first part, when a regular physician's certificate of his said illness is produced if requested, or shall join any labor organization during his term of service, the said party of the second part may cancel this Indenture, discharge said apprentice and retain any funds in his hands· agreed to be paid to said party of the first part and his waste and damage to the property of the said party of the second part.

"That the said party of the first part shall and will in

all things, do, keep and perform all things in this Indenture mentioned on his part to be done, kept and performed, and shall serve the said party of the second part during the full term of said twelve hundred actual working days.

"If the said party of the first part shall during said term of service absent himself from the service of the said party of the second part from any cause whatever, said party of the first part hereby agrees to continue serving the said party of the second part under the terms of this Indenture until he shall have made up any and all lost time.

"And the said party of the second part hereby covenants and agrees, that he the said party of the second part will at the expiration of said entire term of twelve hundred days, if the said party of the first part shall have faithfully done, kept and performed all duties, services and agreements by him keep and perform, and shall have not absented himself from the service of the party of the second part without the previous written permission from him or his authorized agent or manager except only in case of sickness of said party of the first part when a regular physician's certificate of his said illness is produced when requested, nor be a member of any labor organization during his term of service, pay to the said party of the first part one-half the full wages of a skilled workman of the same class of work, to be computed from the commencement of the term of service until the expiration of said twelve hundred days, deducting what may have been previously advanced and paid to the said party of the first part or to his use for clothing, diet, lodging or otherwise.

"If at the end of six months his work is not satisfactory, said J. P. Whitney shall have privilege of laying off said Morris Robeson.

"Saturday will not count as lost time."

The case turns upon the construction of this contract. The defendant insists that by the true reading of the contract the plaintiff must have actually performed work for the defendant upon twelve hundred days to complete the services con-

tracted for; while the plaintiff contends that the agreement means that he must serve the defendant for a term or period included in which there are twelve hundred actual working days. The latter view was taken by the trial court, who thereupon gave the jury binding instructions. The proof on the part of the plaintiff was that he had served under the agreement from January 24th, 1902, to February 2d, 1907, which period includes twelve hundred and eighty-two actual working days, after a deduction for holidays and for the months of July and August in each year (which are not working days in the glass trade), but not deducting Saturdays. It was also in proof that the plaintiff did not work on each one of the above twelve hundred and eighty-two days, being prevented sometimes by sickness, but for which no certificate of a physician was asked or demanded, and being also prevented from working on some of those days because of the closing down of a portion of the plant of the defendant, and at other times for lack of work, or for other causes.

The phrase "twelve hundred actual working days" in the contract must be deemed to be a term or period. This number of days is referred to throughout the contract as constituting a term. Effect must also be given to the word "actual," but, in my opinion, that will not alter the above interpretation. As before said, it was proved that July and August, by the custom of the glass trade, were not days upon which employes performed work, and hence not actual working days in this trade. As popularly understood, *working* days, a familiar and well-understood expression, are all the days of the year, excepting Sundays and holidays. This contract must be construed by the known usage of the trade existing when the contract was made. Hence the word "actual" limits "working days" to those so known in this trade, as distinguished from "working days" as they are generally understood, *i. e.*, all days except Sundays and holidays. Actual working days, therefore, are not intended to mean days upon which work was actually performed by the plaintiff, but days upon which work is ordinarily done in this

trade, as distinguished from those when it is not ordinarily done, *i. e.*, Sundays and holidays and the months of July and August.

The contract further specified that "Saturdays will not count as lost time." Does this sentence have the effect of changing the above construction of the contract? I think not, but rather to confirm it. If the agreement is construed to mean actual days' work, then this is superfluous, for the length of service in that event must be determined by the actual number of days upon which the apprentice shall have worked, and it can make no difference whether Saturdays are counted as lost time or not. If read, however, as above construed, then the phrase is pertinent. Saturday is a half holiday in virtue of the amendment to "An act in relation to days of recreation and holidays, and fixing the days and parts of days so to be set apart and observed, and regulating the maturity of commercial paper with respect thereto," (*Pamph. L.* 1895, *p.* 779), and, therefore, has a somewhat uncertain meaning as applied to working days. It is thus made clear that the half holiday "will not count" against the apprentice by making him lose time that Saturdays shall not be counted as non-working days and shall not tend to extend the term and postpone the date of his emancipation.

The indenture, therefore, means that the service shall continue through a term or period within which there are twelve hundred days, exclusive of Sundays and holidays and all days of July and August in each year, the custom of the trade being not to work during these months. This is also the reasonable view. The arrangement at the beginning contemplated a term, the duration of which could be definitely foreseen and the end accurately ascertained.

The contract was properly construed by the trial court. The amount due to the plaintiff, if he was entitled to recover at all, having been agreed upon between the parties, and the judgment entered for the amount so determined, makes it unnecessary to consider the other assignments of error.

The judgment is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Green, Gray, Dill, J.J.   16.

*For reversal*—None.