# STATE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

March 10, 1911.

Nos. 16,887—(39).

**Validity of municipal ordinance.**

The validity of a provision in a city ordinance expressly authorized by the legislature, does not depend upon the expediency or public policy of its enactment, but upon its being within the legislative power of the state.

**Smoke ordinance — use of soft coal — police power.**

The emission of dense smoke by yard and switch engines being caused by the use of soft coal therein, a prohibition of such use within a populous city is substantially related to and directly tends to the prevention of a nuisance, the emission of dense smoke, and is an exercise of the police power of the state within constitutional limits.

**Class legislation.**

Where there is, a substantial difference in the condition or situation of individuals or objects with reference to the subject embraced in a law, an appropriate limitation, based on such difference, in the application of the law does not make such legislation partial.

[1]Reported in 130 N. W. 545.

-------

[Note] Use of soft coal as a nuisance, see note in 13 L.R.A.(N.S.) 465.

Municipal control over smoke as a public nuisance, see note in 18 L.R.A.(N.S.) 156.

**Same — stationary and locomotive engines.**

> The fact that a prohibition of the use of soft coal in locomotives does not apply to stationary engines does not make such prohibition partial legislation; there being obvious differences between the two classes of engines in respect to the tendency that burning soft coal has to cause a smoke nuisance, and other appropriate legislation having been enacted by the city to prevent the emission of dense smoke by stationary plants.

Defendant demurred to a complaint filed against it in the municipal court of Minneapolis, for using soft coal, other than smokeless coal, in a certain switch engine, contrary to the provisions of an ordinance of the city of Minneapolis. The demurrer was overruled and the case was tried before Leary, J., who ordered judgment against the defendant and imposed a fine of $25. From the judgment entered pursuant to the order, defendant appealed. Affirmed.

*F. W. Root* and *M. L. Countryman,* for appellant.

*Daniel Fish,* City Attorney, and *John A. Dahl,* Assistant City Attorney, for respondent.

SIMPSON, J.

In the municipal court of the city of Minneapolis the defendant was adjudged guilty of violating an ordinance prohibiting the use of soft coal, except smokeless coal, in certain engines within said city, and a fine of $25 was imposed. The defendant appeals from the said judgment.

It was shown and conceded upon the trial that the specified switch engine of the defendant company was, on the day charged, engaged in switching in defendant's yards in the city of Minneapolis, and that the officers and servants of defendant having charge and control of such engine were, at the time, using soft coal therein, which was not smokeless coal, and that the engine was then emitting dense black smoke.

By a demurrer interposed to the complaint, and overruled, the defendant questioned, and now questions, by various assignments of error on this appeal, the validity of the ordinance, and urges in support of its position four objections to said ordinance: First, that the city did not have authority to declare the use of soft coal

in the specified engines a nuisance, nor to prohibit such use as constituting a nuisance; second, that, if the city had power to regulate the use of soft coal, it did not have power to prohibit its use; third, that the ordinance is partial in its application and is class legislation; fourth, that the ordinance is unreasonable, and would deprive the defendant of its property without due process of law, because (a) the ordinance went into effect twenty-seven days after its publication, and not sufficient time was given the defendant company to comply with its terms and continue carrying on its business of transportation; (b) the supply of hard coal is limited.

A consideration of the questions so raised involves not only the terms of the ordinance the defendant was charged with violating, but as well the legislative or charter power under which it was passed, and the general plan and scope of all the ordinances passed in the exercise of these powers. These different provisions, so far as here material, are before the court on this appeal, the charter of the city of Minneapolis being a public act, and the municipal court, from which this appeal is taken, having judicial notice of all ordinances of the city of Minneapolis.

The charter of the city of Minneapolis gives the city council general power and authority to pass ordinances for the government and good order of the city, and to enforce the same, and for these purposes it is given, among many other express powers, power:

"Seventh. To regulate the movement and speed of railroad locomotives and cars;  *   *   *   to regulate and prohibit the unnecessary discharging of steam therefrom;  *   *   *   and may direct what kind of coal any yard or switch engine shall use while being run or operated for any yard or upon any railroad within the limits of said city."

"Thirty-second. To do any and all acts and make all regulations which may be necessary and expedient for the preservation of health."

"Forty-seventh.  *   *   *   It shall also have authority to prohibit and prevent the erection or maintenance of any insecure or unsafe buildings, stacks, walls or chimneys and the emission of

dense smoke in said city, and to declare them to be nuisances and to provide for their summary abatement."

In the exercise of its charter powers, the city council at different times passed ordinances now in force: Declaring the emission of dense smoke in the city a nuisance, prohibiting it, and providing a penalty therefor; prescribing the method of construction of chimneys and flues in buildings; requiring the submission to and approval by the smoke inspector of plans of furnaces and boilers in stationary heating and power plants in buildings to be constructed; creating the position of smoke inspector, and providing for the appointment of such officer; and in November, 1909, the ordinance which the defendant was charged with violating. The material part of this ordinance is as follows:

"Section 1. The use of soft coal in traction engines, switching engines and locomotive engines in the city of Minneapolis is hereby declared to be a nuisance and such use of soft coal, other than smokeless coal, in the city of Minneapolis is hereby prohibited; and no person, company or corporation shall hereafter use or permit or cause to be used any soft coal, other than smokeless coal, in any traction engine, switching engine or locomotive engine in the city of Minneapolis, Minnesota."

It is apparent that this ordinance, and the others referred to, are the outcome of a general plan on the part of the city of Minneapolis to abate the smoke nuisance, as authorized by the legislature. The legislature, having authorized the city council to declare the emission of dense smoke a nuisance, and to provide for its abatement, gave the council specific authority to direct, as one means to that end, the kind of coal that may be used in switch engines. Was this authorization, and an ordinance passed thereunder, if within the limits of the authority, a valid exercise of legislative power?

It is elementary that the legislature cannot prevent a lawful use of property by declaring a certain use to be a nuisance which is not in fact a nuisance, and prohibiting such use. Town v. Rose Hill, 70 Ill. 191, 22 Am. Rep. 71; Hutton v. City, 39 N. J. L. 122, 23 Am. Rep. 203; People v. Rosenberg, 138 N. Y. 410, 34 N. E. 285. On the other hand, it is equally clear that acts or conditions which are

detrimental to the comfort and health of the community may be effectively declared nuisances by the legislature, and in the exercise of that power specified acts or conditions may be declared a nuisance, although not so determined at common law. And the fact that the use or value of property as existing under the common law is thereby injuriously affected does not necessarily bring such legislative action within any constitutional prohibition. City of St. Paul v. Gilfillan, 36 Minn. 298, 31 N. W. 49; Commonwealth v. Parks, 155 Mass. 531, 30 N. E. 174; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L.R.A. 134, 16 Am. St. 813; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L.R.A. 402. Whether the designation of a particular subject as a nuisance is within the legislative power is a question for judicial determination. State v. Gerhardt, 145 Ind. 439, 44 N. E. 469, 33 L.R.A. 313; Town v. Rose Hill, supra. But the scope of legislative action, when invoked to promote the general welfare, is very great. Mugler v. Kansas, 123 U. S. 623, 656, 8 Sup. Ct. 273, 31 L. ed. 205; Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. ed. 253.

The emission of dense smoke into the atmosphere in populous cities may be declared, by the legislative department, a public nuisance, and prohibited. It is an annoyance, an interference with comfort, is destructive of property, and under some conditions is injurious to health. The right of the legislature to prohibit it is not an open question in this state, or apparently elsewhere. In City of St. Paul v. Gilfillan, supra, it is said: "It will not be assumed that the legislature may authorize that to be declared a nuisance which, from the nature of the case, is not and cannot become such. But the matter prohibited by this ordinance (dense smoke) may become a nuisance, and may therefore be the proper subject for regulation or restraint by the city council, under legislative sanction." And in City of St. Paul v. Haugbro, 93 Minn. 59, 100 N. W. 470, 66 L. R. A. 441, 106 Am. St. 427, it is said: "Nor can it be questioned that the legislature could confer upon a municipality the right to prohibit whatever is injurious or detrimental to public health or comfort, and that whatever deprives the residents of urban communities of pure, uncontaminated, inoffen-

sive air is a nuisance." Moses v. United States, 16 App. D. C. 428, 50 L. R. A. 532; Marshall Field & Co. v. City, 44 Ill. App. 410; Harmon v. City, 110 Ill. 400, 51 Am. Rep. 698; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402; Hyatt v. Myers, 71 N. C. 271; Ross v. Butler, 19 N. J. Eq. 294, 97 Am. Dec. 654; State v. Noyes, 30 N. H. 279.

That the smoke nuisance is directly contributed to and almost wholly caused by burning soft or bituminous coal is a matter of general knowledge, and is made to appear as a fact in this case. Ordinary soft coal contains from thirty-two to forty per cent. of volatile matter. Dense smoke is caused by the volatile matter in the coal being distilled without being burned, and the tendency of coal to produce dense smoke depends on the amount of volatile matter in the coal. "Smokeless coal" is a trade or commercial term applied to a grade of soft coal in which the volatile matter runs from sixteen to twenty-one per cent. The volatile matter in hard coal is a much smaller percentage. The only direction as to the kind of coal that locomotives might burn that would be at all effective in abating the smoke nuisance would be a direction to use coals other than those having the highest percentage of volatile matter. A legislative requirement that locomotives shall burn coal other than the kind that produces the smoke nuisance is directly and substantially related to the prevention of annoyance and discomfort incident to dense smoke. The public policy or wisdom of such a prohibition is for the legislature to determine.

The courts cannot undertake to decide whether the means adopted by the legislature are the only means, or even the best means, possible to attain the end sought. Such course would vest the exercise of the police power of the state in the judicial department. "The power which the legislature has to promote the general welfare is very great, and the discretion which that department of the government has, in the employment of means to that end, is very large." Powell v. Pennsylvania, supra. In Nelson v. City of Minneapolis, 112 Minn. 16, 127 N. W. 445, it is said: "The methods, regulations, and restrictions to be imposed to attain, so far as may be, results consistent with the public welfare, are purely of legislative cog-

nizance. The courts have no power to determine the merits of conflicting theories, nor to declare that a particular method of advancing and protecting the public is superior or likely to insure greater safety or better protection than others. The legislative determination of the methods, restrictions, and regulations is final, except when so arbitrary as to be violative of the constitutional rights of the citizen."

Counsel for defendant urges that careful firing in locomotives will prevent the nuisance. Existing conditions suggest strongly either that such is not the fact, or that careful firing cannot, in general practice, be attained. Evidence was submitted by the defendant and by the state on this point, and the trial judge found adversely to defendant thereon. This, then, taking the view most favorable to the defendant, is a mooted question as to the best way of preventing a nuisance. Such question clearly is not for the courts to determine. Under such circumstances the legislature, upon consideration of existing conditions, may decide as to the means best adapted to prevent such nuisance and carry such decision into appropriate legislation. The wisdom or public policy of the decision so made, or of the law passed to carry it out, will not be reviewed by the court. "We regard it as a general rule that the determination by a legislative tribunal of open or debatable questions concerning what is expedient is not subject to review on questions of fact, provided the question is one within the competency of the legislative tribunal to determine." Pittsburgh v. City, 170 Ind. 674, 85 N. E. 362, 20 L.R.A.(N.S.) 461.

The requirement of the ordinance under consideration directly tends to prevent a nuisance, and is clearly within the legislative discretion, and is valid as an exercise of the police power. "The courts will never set up their judgment against that of the legislature, and hold a police law invalid, unless it is clearly so, as having no reasonable tendency to accomplish the desired end." State v. Mrozinski, 59 Minn. 465, 61 N. W. 560, 27 L. R. A. 76. "Where a business is a proper subject of police regulation, doubtless, the legislature may, in the exercise of that power, adopt any measures they see fit, provided only they adopt such as have some relation

to, and have some tendency to accomplish, the desired end; and if the measures adopted have such relation or tendency the courts will never assume to determine whether they are wise, or the best that might have been adopted." Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L. R. A. 857; State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498.

The ordinance is not an interference with the property rights of the defendant, or an abridgment of its privileges protected by the federal and state constitutions. If the use of soft coal tends directly to cause a nuisance, a prohibition of such use by the legislature is not forbidden by the constitutional provisions referred to. Such being the case, the ordinance is a legitimate exercise of the police power of the state for the promotion of the comfort and welfare of the people, and the defendant cannot complain of the resulting restrictions in the use of its property. Property rights and privileges are subject to reasonable regulations to promote the general welfare, and the defendant holds its property under the implied obligation that its use of it shall not be injurious to the community. The regulation and abatement of nuisances is one of the ordinary functions of the police power of the state. Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. ed. 1036; Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77; Mugler v. Kansas, supra; Powell v. Pennsylvania, supra.

It appearing that the legislature had power or authority to pass the enactment contained in this ordinance, there remain for consideration the questions raised by the defendant as to the due exercise of that power in the present ordinance. The ordinance declares the use of soft coal in certain engines a nuisance. This provision of the ordinance does not affect its validity. If the ordinance is a valid exercise of the legislative authority to prohibit the use of soft coal as a means of preventing the nuisance of dense smoke, its validity or purpose is not affected by the declaration that the use of soft coal in such locomotives is a nuisance.

An ordinance passed under general authority to regulate or control a subject may be held unreasonable, as not within the purview of the charter authority. This ordinance was passed under express au-

114 M.—9.

thority from the legislature, and therefore depends, for its validity, on the power of the legislature. The charter empowers the council to direct, by ordinance, the kind of coal which may be used, and to punish violations of such ordinance. A designation of one kind of coal which may not be used, leaving other kinds open to use, is a designation of the kinds which may be used. The question of whether the passage of this ordinance, with the requirement therein contained as to fuel to be used in certain engines, is a reasonable exercise of the power granted the council, is therefore not involved. Dillon, Municipal Corporations, § 328; City of St. Paul v. Gilfillan, 36 Minn. 298, 31 N. W. 49; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402; Landberg v. City, 237 Ill. 112, 86 N. E. 638, 21 L. R. A. (N. S.) 830, 127 Am. St. 319; Walker v. Jameson, 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. 222. Much of the testimony submitted on the trial, and a number of the authorities cited in the briefs herein, while applicable to the determination of the question whether an ordinance like the one under consideration would be reasonable, if enacted under general charter powers, have no application to the question of the authority of the council to enact this ordinance under express power from the legislature.

Dense smoke is not a nuisance per se. It only becomes a nuisance when it permeates the air surrounding people and invades their residences and places of occupation. It is stipulated in this case that the yards of the defendant company and tracks therein extend through a densely populated portion of the city of Minneapolis. The emission of dense smoke by switch and yard engines in such yards in the city of Minneapolis is therefore a nuisance per se. The legislature and the council alike are presumed to have acted with full knowledge of existing conditions, and the validity of the ordinance must be tested upon the assumption that yard and switch engines emitting dense smoke do thereby permeate with such smoke the atmosphere in the densely populated portions of the city.

The ordinance, including in its terms locomotives not operating in yards, is to that extent broader than the express provision of the act permitting the council to direct what kind of fuel shall be

used in switch and yard engines. If locomotives generally were in the same situation with reference to the smoke nuisance that switch and yard engines are, the prohibition of the ordinance would be effective and valid as to all locomotives, because reasonably and necessarily included in the exercise of the express power conferred by the charter; but such is not the fact. The road locomotive comes from without the city with fire made, or, if fired up within the city, ordinarily soon goes beyond the city limits. It is at work in the city but a comparatively short time, and on a continuous run. Clearly many considerations of necessity, expediency, and policy are involved in the regulation of the fuel of such locomotives, not involved in such regulation as to switch and yard engines. The legislature evidently distinguished between the two classes of engines, and the recognition of a basis for that distinction by the court leads to the conclusion that the prohibition of the ordinance is invalid as to locomotives other than yard or switch engines, because not within the purview of the general authority granted the council. Locomotives other than switch and yard engines being excluded from the operation of the express power conferred, they should not be held to be within the scope of an implied power. The engine in which soft coal was used resulting in the charged violation of the ordinance was a switch engine, and as to such engine the ordinance is valid and effective. "If a statute or ordinance contains provisions that are invalid, the other portions thereof are valid, if they are not dependent on the part which is void." State v. Stone, 96 Minn. 482, 105 N. W. 187.

The second objection of appellant, that the city could not prohibit the use of soft coal, even though it had the power to regulate it, is involved in the first objection considered. The means adopted to prevent a nuisance are primarily for the legislature. Nor is it difficult to account for or justify the choice of means in this case. In the effective exercise of the police power, the aim is, not to punish the maintenance of nuisances, but to prevent their creation. Legislation in the exercise of the police power of the state contains many prohibitions as to locations of plants, manufacture and sale of articles, and carrying on of industries, amply justified al-

though the resulting conditions without such prohibitions would not always or necessarily in each instance affect injuriously public welfare. The difficulty of enforcing a direct prohibition against the emission of dense smoke by switch engines is apparent. Moving about, as they do, it would be often impossible to determine to what company an engine which was excessively smoking belonged, or what individual was in charge of it.

It is further urged that the ordinance is invalid because it is class legislation, and this because: It is invalid as to, and hence does not include, road engines, and it does not apply to stationary engines. It has already been suggested that, if there were in fact no basis for a distinction in respect to smoke prevention between road engines and switch engines, then the ordinance would be valid as to road engines; but there is a distinction between such engines, both as to the condition sought to be corrected, and as to the necessity, expediency, and policy of the application of a particular means for correcting such condition.

There would seem to be, also, ample grounds for a distinction between locomotives and stationary plants as to the means best adapted to prevent the smoke nuisance. As stated, the ordinance of the city dealing with stationary plants regulates the construction of chimneys and flues, and through the approval of plans the location, arrangement, and construction of furnaces and boilers, and prohibits the emission of dense smoke. In the case of switch engines, supervision of the construction is not attempted; but the protection of the community from dense smoke is sought by direction as to the kind of fuel to be used. The necessary limitations in the construction of locomotives, the firebox with a water jacket, the frequent hand firing, the forced draft and quickly varying conditions of work, the fact that steam is mingled with the smoke, and that unconsumed gases are discharged near the ground, instead of at considerable elevation, the fact that the engines are moving and cannot be subjected to effective supervision, are in marked contrast with the conditions related to the making of dense smoke present in stationary plants. In stationary plants the most favorable conditions for complete combustion can be obtained. The firebox may be com-

pletely lined with brick, room is available for automatic firing mechanism, the down draft may be used; in fact all the adverse conditions referred to necessarily present in a locomotive, because of the work it is called upon to do, may be and are wholly eliminated in the case of stationary plants; and because the operator of a stationary plant can always be located and identified, as to him the prohibition of the emission of dense smoke may be made a sufficient and effective regulation. The ordinances of Minneapolis do not permit the emission of dense smoke by either stationary or yard engines, but for obvious reasons they prescribe different means for preventing, in the different plants, the creation of the nuisance. It is perhaps unnecessary to suggest that proof that some stationary plants cause dense smoke does not establish a basis for a necessary common classification of stationary plants with locomotives causing smoke, neither does it disprove that stationary plants can, and that many in actual operation do, continuously burn soft coal without causing any appreciable smoke.

The application of a smoke prevention statute to one of these classes of engines and not to the other, even where the law wholly exempts one class from the prohibition as to causing dense smoke, has been frequently passed upon and sustained by other courts. In Moses v. United States, 16 App. D. C. 428, 50 L.R.A. 532, an act of congress was considered which prohibited the emission of dense smoke from smokestacks and chimneys other than those connected with private houses and locomotives. The classification was held not to be arbitrary. In State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L.R.A. 402, an act of the legislature making the emission of dense smoke a nuisance, which omitted from its operation locomotive engines and steamboats, and applied only to cities having a population of over one hundred thousand, was held not objectionable as class legislation. In People v. Lewis, 86 Mich. 273, 49 N. W. 140, a similar ordinance, exempting dwellings and steamboats from its operation, was held not to make an arbitrary classification, but one resting upon reasons of public policy, growing out of the conditions surrounding the business of the different classes. In City of Brooklyn v. Nassau, 44 App. Div. 462, 61 N. Y. Supp. 33, an ordinance

providing that "no factory, engine room or electrical station shall use what is known as soft coal for fuel in the furnaces of such factories, engine room or electrical stations, within a radius of four miles of the city hall in the city of Brooklyn, except for the purpose of heating or welding iron or steel," was held valid against the objection that it was partial legislation.

Where there is a substantial difference in the condition or situation of individuals or objects with reference to the subject embraced in the law, an appropriate limitation based on such difference in the application of the law is not partial legislation. Legislation designed to prevent a smoke nuisance, to be equal and uniform, need not apply alike to "all soft coal users," without regard to the widely different conditions, relating to the resulting smoke, surrounding such use by different users. The proper basis of the classification adopted by the legislature is the relationship of burning soft coal in the different kinds of plants to the smoke nuisance. In State v. Sheriff of Ramsey County, 48 Minn. 236, 51 N. W. 112, 31 Am. St. 650, an ordinance relating to the smoke nuisance was held invalid, because it based a classification on the different uses made of the power generated, without regard to the situation or conditions of the furnaces, with reference to smoke, generating such power, and the rule is stated that a law, to be general and uniform, must operate equally upon all the subjects within the class for which the rule is adopted, and the limits of such class must not be determined arbitrarily, but the classification must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in the different classes as to disclose the necessity or propriety of different legislation in respect to them. In State v. Hammer, 42 N. J. L. 435, it is stated: "The characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such,

in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

The classification in the present case falls clearly within the rule thus well stated. Where there is a distinction related to the subject-matter of the law justifying a classification, the court cannot substitute its judgment for that of the legislature as to the wisdom or policy of the application to certain objects or individuals of the particular law based on such distinction. In the case of State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L.R.A. 297, 89 Am. St. 571, Chief Justice Start gave expression to this principle as follows: "Courts ought never to be unmindful of the fact that the lawmaking power is vested in the legislature. Therefore, if there be any facts fairly calling for the exercise of legislative discretion in the classification of particular subdivisions of the state for the purposes of legislation, courts cannot review such discretion, and declare statutes making such classifications invalid, simply because they differ with the legislature as to the propriety of the classification. It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional. In considering the constitutionality of a statute, courts will take judicial notice of all facts relevant to the question."

The final objection urged against this ordinance, that it is unreasonable and would deprive the defendant of its property without due process of law, because sufficient time was not given before the ordinance went into effect to enable the defendant to comply with it, does not seem sustained by anything appearing in the record of the case. So far as the record discloses, the only change the defendant company would be required to make in order to comply with the ordinance would be to use in its engines the grade of coal known as "smokeless coal." It does appear that some reconstruction of the fireboxes of engines would be necessary before hard coal could be burned therein successfully. By the ordinance the fuel directed to be used in switch engines is not limited to hard coal. It may very well be that an ordinance which did, in fact, require changes to be made in the appliances necessarily used by a trans-

portation company, without giving a reasonable time to make such changes before the ordinance went into effect, would be an unlawful interference with property rights, but such case is not presented by the facts here.

The further ground assigned for the unreasonableness of the ordinance, that the supply of hard coal is nearly exhausted, likewise finds no support in fact, either as disclosed by the record in this case, or within common knowledge.

The ordinance and the judgment against the defendant for violation of the same appearing to be valid, the judgment is affirmed.