## STATE OF NEW JERSEY v. ERIE RAILROAD COMPANY.

Argued February Term, 1912—Decided October 4, 1912.

1. Upon an indictment charging defendant railroad company with creating and maintaining a nuisance, by negligent and excessive use of soft coal, causing dense smoke to be emitted from its roundhouse and locomotives—*Held*, that upon proof to that effect whereby a public nuisance was created, the defendant might be found guilty as charged.

2. A direction that if the jury were satisfied that the nuisance was created by the negligent use of soft coal, the defendant was guilty as charged was not erroneous, there being proof from which the jury might infer that the excessive and negligent use of soft coal would create a public nuisance.

3. While the use of soft coal *per se* cannot be adjudged to be a nuisance, its excessive and negligent use may create such a condition in a built-up and populous community, and whether it has done so under the circumstances in any case is a question for the jury.

4. Instructions given by defendant to its servants as to the proper and improper method of using soft coal in the operation of its business will not excuse it from culpability, if in fact the nuisance be created and maintained.

On error to Hudson Quarter Sessions.

Before Justices TRENCHARD, PARKER and MINTURN.

For the state, *Pierre P. Garven,* prosecutor of the pleas, *George T. Vickers,* assistant prosecutor of the pleas, and *Thomas G. Haight.*

For the defendant, *Collins & Corbin.*

The opinion of the court was delivered by

MINTURN, J. The defendant was indicted for maintaining a public nuisance in Jersey City, and after trial before the Hudson Quarter Sessions was convicted; from which judgment it has taken a writ of error, reviewing the entire record of the case by the certificate of the trial judge under the one

hundred and thirty-seventh section of the Criminal Procedure act. The indictment substantially charged that the defendant "unlawfully, negligently, unskillfully and unnecessarily" conducted its roundhouse, and conducted, drove, ran and moved its locomotive engines along and upon its tracks; and that as a result thereof "divers noisome, unwholesome and dense smoke and noxious penetrating and discoloring vapors and offensive odors" were emitted from the roundhouse and the engines "in greater quantities than were required for the legitimate and proper use and operation of its railroad," whereby the public were annoyed, disturbed and inconvenienced. The plain issue thus presented resulted in an inquiry whether the railroad company, in the exercise of its privilege as a chartered common carrier, had been negligently exercising its franchises to the detriment of the community. That it possessed the legal right, under its charters as lessee of the Long Dock Company and of the Paterson and Hudson River Railroad Company, to burn any kind of coal necessary for the effectual operation of its railroad must be conceded. But this concession carries with it the limitation that such operation shall not include the right *ad libitum* to create a public nuisance by doing the legalized act in a negligent manner.

The rule of law applicable to this situation was stated in *Morris and Essex Railroad* v. *State,* 7 *Vroom* 553, to be substantially that a railroad company authorized by law to use locomotive engines is not responsible for a nuisance resulting as an incident to their use, but that responsibility may exist for their negligent use. The case was instituted by an indictment against the company based upon the emission of sparks and fire from its locomotives; which indictment failed to charge that the sparks were negligently emitted, and in that respect proved defective.

The language of the Court of Errors and Appeals is: "In suits for such injuries, negligence is the gist of the action, and must be charged in the declaration." Wherever the question has been raised in this jurisdiction, negligent operation alone presents the *ratio decidendi,* whether it be upon an application for equitable relief against a conceded private nuisance, or in

a prosecution under the criminal law upon an indictment for creating and maintaining a public nuisance; for the law is well settled that for mere incidental damage accruing by reason of the authorized and proper operation of the railroad, the company is exempt from liability upon the principle of *damnum abseque injuria*. *Trenton Water Power* v. *Raff*, 7 *Vroom* 335; *Beseman* v. *Pennsylvania Railroad*, 5 *Dick. Ch. Rep.* 235; *Mayor of Jersey City* v. *Abercrombie*, 58 *Atl. Rep.* 73; *Simmons* v. *Paterson*, 15 *Dick. Ch. Rep.* 385.

In other jurisdictions the rule is similar. *Cincinnati N. O. & T. Ry.* v. *Commonwealth*, 17 *L. R. A.* (*N. S.*) 561, and cases cited; *State* v. *Chicago, &c., Railway Co.*, 114 *Minn.* 122; *Peck* v. *Michigan City*, 149 *Ind.* 670; *Dill. Mun. Corp.* (*4th ed.*) 1017; 4 *Dig. U. S. S. C. Rep.* 1177.

The insistence of the state was that the defendant, through its roundhouse and locomotives, caused to be emitted dense smoke in quantities greater than was required for the proper operation of its railroad, causing the nuisance complained of. The testimony on behalf of the state was developed with the view of presenting that situation to the jury, and the charge of the trial court was framed upon that issue in its various phases as presented by the testimony.

The complaint now made against the verdict by the defendant is based mainly upon alleged trial errors. It is said that there was not sufficient evidence to sustain that part of the indictment relating to the existence of a nuisance in the roundhouse, and that the trial court was in error in refusing defendant's request to so charge. We think there was evidence in the case directed specifically to the smoke emitted from the roundhouse. Scott, who was employed for the purpose of observing and reporting conditions there and elsewhere, testified as to this, and whether his testimony, together with the other facts and circumstances in the case, was sufficient to satisfy the jury was a question upon which the trial court properly ruled by refusing to take the question from them.

As was said by the New York Court of Appeals in *Mc-Carly* v. *Natural Carbonic Gas Co.*, 189 *N. Y.* 40: "No hard

and fast rule controls the subject, for a use that is reasonable under one set of facts would be unreasonable under another. Whether the use of property to carry on a lawful business which creates smoke or noxious gases in excessive quantities amounts to a nuisance depends on the facts of each particular case." And in all cases where the question has arisen whether the facts and circumstances are sufficient to create a condition tantamount to a public or private nuisance, the solution of the inquiry where there is evidence upon the subject is invariably referred to the jury. *Remsberg* v. *Iola Cement Co.,* 73 *Kan.* 66; *King* v. *Vicksburg Railroad,* 88 *Miss.* 456; *Johnson* v. *New York,* 186 *N. Y.* 139; *Melker* v. *New York,* 190 *Id.* 481.

It is also urged that the trial court committed error in allowing the jury to pass upon the question whether soft coal was necessary in the operation of defendant's engines. We cannot by excising certain parts of the charge adopt a construction concerning them that will do justice to the entire charge. Neither the rules of logic nor of legal construction require this method of criticism. But taking the entire charge and considering the guiding language and principle that animates it, we find no difficulty in concluding that it was essentially fair in all of its aspects towards the defendant. It is true the court referred to the testimony in the case going to show that the defendant could operate its engines without the use of soft coal, but the court concluded its remarks upon that subject with the statement "you are to take all the evidence into consideration in determining whether or not this defendant has exercised ordinary care in the operation of its road. Whether or not this defendant has been negligent in the performance of its duty to the public;" and the court also referred to the fact that the defendant could not be held responsible "if the conditions were incident to the proper and lawful operation by the defendant of its railroad." These statements of the law comply with the legal requirements, and their application in substantially correct form occur frequently throughout the charge.

The court charged correctly in accordance with the decision in *Mayor of Jersey City* v. *Abercrombie, supra,* that the defendant had a legal right to burn either hard or soft coal, and added, "provided always that it used ordinary care to satisfy its legal obligation to operate its property without negligence." But it is insisted that the language of the court gave the jury the right to adjudge defendant guilty if they found that the nuisance was created and maintained by the mere use of soft coal. It is insisted that there is no statute in New Jersey which prevents the use of soft coal, and this may well be conceded for it is not the use of soft coal to which the attention of the jury was directed, but its use in such quantities and in such manner as to create a nuisance; for there is ample authority to sustain the proposition that a public nuisance, unless authorized by express legislation, is not within the power of anybody, either corporate or otherwise, to create and maintain.

In some jurisdictions its excessive use is prohibited by injunction. *McCarty* v. *National Carbonic Gas Co.*. 189 *N. Y.* 140; *McGill* v. *Pintsch Company,* 140 *Iowa* 429.

In others by ordinance. *State* v. *Chicago, M. & St. Paul Ry. Co.,* 114 *Minn.* 122; cited in 23 *Am. & Eng. Ann. Cas.* 1036; *Brooklyn* v. *Nassau Electric Co.,* 44 *App. Div. (N. Y.)* 462; *Bowers* v. *Indianapolis,* 169 *Ind.* 105; *State* v. *Dower,* 134 *Mo. App.* 352.

We find nothing in the charters of the constituent companies of the defendant which concedes to it the absolute right of burning soft coal *ad libitum,* regardless of the public right. And in the absence of such a concession we must assume that while the legislature granted to the defendant the right to operate its railroad, this right carried with it no grant or power to commit a nuisance. But, upon the contrary, we must assume upon the principle of *salus populi suprema est lex* that it was within legislative contemplation that the franchise granted to a *quasi*-public corporation would be so exercised as not to create detriment and damage to the body politic.

In *Garrett* v. *State,* 20 *Vroom* 94, Mr. Justice Knapp, speaking for this court, conceded the power of the legislature

to legalize an act which at common law would be construed as a nuisance; "such legislation, however," he said "being in derogation of the common law must receive strict construction, and the public injury resulting must be the necessary result of the authorized business after the exercise of proper care, skill, diligence, employing careful servants and using processes least likely to produce detriment to the public. If he fails in any of these and unnecessary injury results to the public he becomes liable to indictment." Citing 2 *Whart. Com. L.* 1424. The case was subsequently affirmed by the Court of Errors and Appeals in 20 *Vroom* 693. To the same effect is *Cogswell* v. *New York, &c., Railroad Co.,* 103 *N. Y.* 10.

In *United States* v. *Fisher,* 2 *Cranch* 390, Chief Justice Marshall, with his usual force and lucidity, enunciated the rule: "Where rights are infringed; where fundamental principles are overthrown; where the general system of laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects." Applications of this principle will be found in *Peck* v. *City of Michigan, supra; Gray* v. *City of Paterson,* 11 *Stew. Eq.* 1, and in *Thompson* v. *Paterson, &c., Railroad,* 1 *Stock.* 526. Conversely, it has been held in the English courts that the presumption is that the legislature did not intend to confer a license to maintain a nuisance in the absence of an express grant of power to that effect. *Metropolitan Asylum District* v. *Hill,* 6 *App. Cas.* 193; *Smith* v. *Midland Railroad Co.,* 37 *L. T.* (*N. S.*) 224.

Dense smoke is not a nuisance *per se,* but it may become so, when it permeates the air surrounding people, and invades their residences and places of occupation; and the right of the legislature to prohibit it is not open to question in the interest of the health and welfare of the community. *State* v. *Chicago, Milwaukee and St. Paul Railroad,* 114 *Minn.* 122.

And hence, the ultimate question before the jury as presented by the charge was not as defendant insists, that the use of soft coal was a nuisance *per se,* but whether soft coal used as the defendant was charged in the indictment with

using it, *i. e.,* "unlawfully, negligently, unskillfully and unnecessarily," in the operation of its road, was a nuisance.

Exception was taken also to the refusal of the trial court to charge that if the jury find that the defendant exercised reasonable care in the employment of its servants, and instructed them in proper methods of burning soft coal, and took reasonable care to see that those instructions were executed, the jury must find for defendant. It is to be observed, in connection with the exception with which we have just dealt, that the present exception assumes that there are "proper methods of burning soft coal," and therefore it follows there must be improper methods upon defendant's concession. This exception is designed to absolve the defendant from culpability, if, after due instruction and observance in operating methods, the servants of defendant create the nuisance. The contention militates against the familiar maxim, *qui facit per alium facit per se,* which applies to the corporation as well as to the individual. As was said by Mr. Justice Van Syckel, in *State* v. *Passaic Agricultural Society,* 25 *Vroom* 260: " It is difficult to see how a corporation may be amenable to civil suit for libel and malicious prosecution and private nuisance, and mulcted in exemplary damages, and at the same time not be indictable where the injury falls upon the public. The habitual indulgence in vicious practices on the premises of the defendant corporation stamps it as a disorderly house without regard to the intent which prompted the disorder." 2 *Whart.,* § 1422, lays down the rule as follows: "The principal is indictable for acts of his agents performed by the agents within the orbit of the delegated office; and if he [the master] share the profits he is penally responsible for his agents' acts in creating a nuisance within the range of his employment, though these acts were done without his knowledge and contrary to his general orders." See, also, *Queen* v. *Stephens,* 1 *Q. B.* 702; 5 *Thomp. Corp.* 6418; *Rhinesmith* v. *Erie Railroad,* 47 *Vroom* 783.

And so it has been held in consonance with this principle that the intent of the person maintaining a nuisance which is dangerous or offensive to the public is entirely immaterial. If

he cause or suffer the nuisance, and the public is so prejudiced, the offence is complete, for every man is presumed to intend the natural and probable consequences of his acts. *Clark Cr. L.* 308; *Seacord* v. *People,* 121 *Ill.* 623; *People* v. *Albany,* 11 *Wend.* 540.

The case of *State* v. *Young,* 56 *Atl. Rep.* 471, relied upon by defendant in this connection was based upon an indictment against individual directors of a street car company, and not against the corporation, so that its relevancy in this connection is not apparent. The refusal of the trial court to charge as requested upon this question was therefore not error.

We find no injurious error in the charge wherein it deals with other contributing causes of nuisance in the neighborhood, such as adjacent factories, for the reason that the court made it clear to the jury both in that part of the charge and throughout the entire charge that the defendant was responsible only for its own acts, and not for the acts of others, and that where its own acts were merely incidental to the proper operation of the road the defendant was not responsible.

We cannot find reading this charge as an entirety as it should be read in order to correctly comprehend the full import of the court's instructions (*State* v. *Mellillo,* 48 *Vroom* 505), that it contains anything of a misleading or doubtful character by which the jury could be misled to the defendant's detriment.

It is the duty of the court to examine the whole charge for the purpose of ascertaining whether, under the one hundred and thirty-seventh section of the Criminal Procedure act, it was prejudicial to the accused. *State* v. *Zdanowicz,* 40 *Vroom* 619. And our examination has not disclosed to us wherein that error may be said to exist.

Our examination of the alleged errors relative to the admission and rejection of testimony of various witnesses satisfies us that there was no material error in that respect by which the defendant can be said to have been prejudiced, in view of the legal principles applicable to the case as herein outlined, and the judgment of conviction will therefore be affirmed.